# THE PEOPLE *v.* JOSE MARIA ARCEO.

JURORS SPEAKING DIFFERENT LANGUAGES.—The proviso to the Act concerning
jurors, excepting the Counties of Monterey, etc., from the provisions of the Act
which requires the juror to understand the language in which the proceedings of
the Court are had, does not deprive the Court in one of the excepted counties of
the power to excuse jurors of its own motion, when those on the same panel
speak several different languages.

IDEM.—Such proviso can have effect by construing it to mean that a want of sufficient
knowledge of the language in which the proceedings of the Courts are had is not
a legal disqualification of a juror, but that the Court may require in its discretion
all the jurors on the same panel to understand the same language.

COURT MAY EXCUSE JURORS.—The Court may, of its own motion, for any good
reason, excuse a qualified juror from sitting on the panel in a criminal case;
and this will not be error, if the defendant is tried by a jury of lawful men.

IDEM.—A party on trial is entitled to a lawful jury, but is not entitled, as a matter
of absolute right, to have the first juror who is called and possesses all the statu-
tory qualifications, sit in his case.

APPEAL from the District Court, Third Judicial District,
Monterey County.

The defendant was indicted for the crime of murder, and
convicted of murder in the first degree, and sentenced to be
executed. He appealed from the judgment.

The other facts are stated in the opinion of the Court.

*J. J. Papy, G. M. Crane,* and *S. F. Geil,* for Appellant.

Is that subdivision prescribing the qualification of jurors
constitutional? and if constitutional, has the Court the power
to ignore it?

There is nothing in the Constitution prohibiting the passage
of the proviso, and in all things not prohibited the power of
the Legislature is as unlimited as that of Parliament. (Dwaris
on Statutes, Chapter XII, Sec. 40; *People ex rel. Vermeule,* 5
Cal. 27; *Calder* v. *Bull,* 3 Dall. 386.) Article IV of the Con-
stitution says, after dividing the government into departments:
" And no person charged with the exercise of powers properly
belonging to one of these departments shall exercise any func-
tions appertaining to either of the others." Where, then,
does the Court derive its authority to negative the law.
(*McCauley* v. *Brooks,* 16 Cal. 40.) Can the Judge excuse

jurors accepted by the defendant because he chooses to do so?
The defendant could not be deprived of his rights by the mere
volition of the Judge. (*People* v. *Beatty*, 14 Cal. 566.)

*J. G. McCullough, Attorney-General*, for the People.

A conclusion leading to absurd results must not be adopted
in construing the proviso to the Jury Law. (*In Matter of
Hedley*, 31 Cal. 108; *People* v. *King*, 28 Cal. 214.) The only
reasonable construction of the first section of the Jury Law,
as applicable to Monterey County, is to drop the third subdi-
vision when reading it.

By thus reading it, jurors must have the qualifications
required in the first, second and fourth subdivisions. But
must they not have something else? Must they not be able
to comprehend the language of the Court and counsel? The
general law is, that the proceedings of Courts must be in
English. (1 Bishop's Crim. Procedure, 165.) But there is an
express law on the subject, applicable to Monterey County.
If the proceedings were all in English there, it would contrib-
ute to justice to have the jurors understand that language.
If they are had in the Spanish language, the jurors should
understand that language. Should not, then, the Court be
allowed to impanel such jurors as understand the language
in which the proceedings of the case are had?

By the Court, SAWYER, J.:

The trial of this cause was had in the County of Monterey.
The Court in impanelling the trial jury, of its own motion,
excused six jurors on the ground that they were "ignorant of
the language in which the proceedings of the Court are car-
ried on." To this action of the Court the defendant excepted.
The ruling is assigned as error, and is the only one relied on to
reverse the judgment.

The first section of the "Act concerning grand and trial

6

jurors " of 1863 (Laws 1863, p. 630), as amended by the Act of 1864 (Laws 1864, p. 462), prescribes the qualifications of jurors. The third clause requires a juror to be one " who has sufficient knowledge of the language in which the proceedings of the Courts are had ; provided, that the requirements of this third subdivision of section one shall not apply to the Counties of Monterey, San Luis Obispo," etc. If force is to be given to this provision according to the letter, ignorance of the language in which the proceedings of the Court are had, is not an absolute disqualification for a juror in the County of Monterey ; and à challenge on that ground would not, as a matter of right, be sustained. If the jurors were not absolutely disqualified, it is claimed that the Court, of its own motion, had no right to reject jurors on the ground stated, and that having rejected six on that ground, there was error which entitles the appellant to a new trial. On the other hand, it is claimed, firstly, that, to give the proviso a literal construction would lead to absurd consequences, and that such a construction is therefore inadmissible ; secondly, that admitting the jurors rejected not to be disqualified under the statute, yet it does not follow that the Court, to avoid the inconvenience which would arise from having several different jurors speaking as many different languages, but not understanding the language in which the proceedings are had, might not properly, in the exercise of a sound discretion, reject those ignorant of the latter language ; thirdly, that the defendant is only entitled to an impartial jury, and, if he is tried by such a jury, he could not be injured, and has no right to complain that some other particular juror, though competent, was excused.

It cannot well be said that the Legislature did not mean anything by adopting the proviso in the third subdivision ; for the section, as it before stood, contained all the other provisions, and the Act seems to have been amended for the express purpose of introducing the proviso. It is well known that in some of the counties in the southern part of the State, including most of those named in the proviso, a large portion of the population are ignorant of the English language, in which the

proceedings of the Courts are ordinarily had, although in some of them the proceedings are authorized to be had in either the Spanish or English language. In those counties it was probably found difficult to obtain jurors who were acquainted with the English language, without restricting the choice to limits too narrow, or imposing the burden of jury duty on a small portion of the citizens only. It was, doubtless, in view of this state of things that the proviso was added, so far as the counties named are concerned. But because ignorance of the language in which the proceedings are had is not absolutely a general disqualification, it does not follow that it was contemplated, that in all cases, where a juror is presented possessing all the other qualifications, he must necessarily be taken by the Court, however ignorant he may be of the language in which the proceedings are to be had. Such a construction would certainly lead to absurd consequences. Let us see how it might work : In the County of Monterey, "every written proceeding in a Court of Justice * * * shall be in the English language." (Judiciary Act, Laws 1863, p. 345, Sec. 87.) This is a criminal action, and the Court in a criminal action is required to charge the jury as to matters of law (Crim. Prac. Act, Secs. 362, 399) ; "and in no case shall any charge or instructions be given to the jury otherwise than in writing, unless by mutual consent of the parties." (Id. Sec. 362.) The charge, then, is "a written proceeding," and in Monterey County must be in writing, and in the English language. "No person shall be suffered to speak to the jury on any subject connected with the trial." (Id. 491.) When the jury retire to consider their verdict "the officers shall be sworn * * * to suffer no person to speak to them [the jurors,] nor speak to them themselves, on any subject connected with the trial," etc. (Id. 393.)

In this case, it does not appear what language the rejected jurors speak, but, from their names, it is quite evident that five of them speak the Spanish, and one the German, language. From the character of the population of this State it might well be so, or they might respectively have spoken Spanish,

German, French, Italian and Russian. Suppose there were two or more languages besides the English, it would manifestly be impracticable to carry on the proceedings. An interpreter for each language would be required, and the testimony of each witness would have to be interpreted as many times as the number of languages represented—in this case probably twice, at least, and it may be three times. It might be difficult, and even impossible, to find interpreters. At all events, it would be a great obstruction to the proceedings of the Court, and open the door to errors and misunderstandings innumerable. The law, however, provides for interpreters of the testimony of witnesses. But, when the testimony is closed and the cause submitted to the jury, how are the jurors, each speaking a different language, to compare views in the jury room. We know of no law authorizing the employment of interpreters. It would be difficult, if not impossible, to properly conduct trials with a jury so constituted; and to hold that the Legislature intended that every person otherwise competent, and not objected to by either party, must be taken as a juror without reference to the language he speaks or understands, would be to suppose an intention to adopt an impracticable rule. Such a construction of the Act would lead to absurd consequences. This view would not necessarily deprive the Act of all operation. For, in the counties named, it might not be difficult to obtain a jury, all of whom speak the same language. At one time a jury speaking the Spanish language might more readily be made up, and at another time one speaking English, German, or French, and the Court, in the exercise of a sound discretion, under the circumstances of each case, would determine which language the juror must understand.

We are not aware that it has ever been settled, that a defendant, under all circumstances, is entitled to have a judgment reversed, where the Court, of its own motion, against his objection rejects a juror possessing all the statutory qualifications. If a juror not possessing the requisite qualifications is allowed to sit against the objections of a defendant, the judg-

ment will be reversed, because he has not been tried by a lawful jury. But a qualified juror may be rejected, and still a jury of lawful men, against whom there is no objection, may be obtained. A party is entitled to a lawful jury, but no decision has been brought to our notice to the effect that under all circumstances he is, as a matter of absolute right, entitled to have the first juror called who has all the statutory qualifications.

This precise question was raised in *United States* v. *Cornell*, 2 Mason, 91. The juror was held to have been properly excluded, but Mr. Justice Story, in concluding the discussion of the point, said: " Even if a juror had been set aside by the Court for an insufficient cause, I do not know that it is matter of error, if the trial has been by a jury duly sworn and impanelled, and above all exceptions. Neither the prisoner nor the Government in such a case have suffered injury," (p. 106.)

In *Montague's Case*, 10 Grattan, 767, the same point arose, and the judgment was reversed because a juror was excused without any good reason; but the Court say: " And it seemeth to the Court that in case of necessity and to prevent a failure of the ends of justice, it is also competent for the Court to excuse or set aside a juror who, although *free from any statutory disability, and possessing the legal qualifications of a juror* and standing indifferent between the commonwealth and the accused, *is yet disabled, physically or mentally, by disease, mental afflictions, ignorance of the vernacular tongue*, loss of hearing or other like cause, from properly performing the duties of juror; and this of its own motion, without the suggestion or consent of either party; but that the power of so doing is to be exerted with due caution and circumspection, and in the exercise of a sound discretion, for the same purposes and upon the same grounds and principles which govern the Court in the exercise of its discretion to discharge a jury sworn in a criminal case before they shall have rendered a verdict; the former power being in effect but a corollary from the latter, which has been confirmed by a statutory provision" (p. 772.) In this case *ignorance of the vernacular tongue* is

regarded by the Court as sufficient to justify a Judge in rejecting a juror, yet it does not appear that such ignorance was an absolute legal disqualification. No statute is referred to making it such, and the Court is speaking·of persons "free from any statutory· disability." We are not aware that such ignorance would be a legal disqualification anywhere unless made so by express statute. Yet there can be no doubt that, independent of any provision on the subject, a Judge would be justified in excusing a juror on that ground.

In *Tatum* v. *Young*—a civil case—1 Port. 298, a competent juror was excluded against the objection of the defendant, and this ruling was assigned as error; and on the argument the respondent's attorney challenged the opposite party " to show a single case in all the books, where a verdict has been set aside merely because a juror was rejected that might legally have served " (303); but none was produced. The Court, in deciding the case, say: " It is a general rule that neither party can claim any advantage from any decision, or other matter having no tendency to prejudice him. Where a cause has been tried by an unexceptionable jury, the law presumes no injury to either party for want of any other person in lieu of those composing that jury. Should it happen, as supposed in argument, that a Judge, from political or other unworthy motives, might at some time reject jurors to effect some sinister or criminal design, and the circumstances disclose a probable injury to either party, the question on error might be essentially different," etc. (309.) After citing Mr. Justice Story's observations from 2 Mason, the Court say: " We are of opinion that this rejection of the juror, under the circumstances of the case, is not a matter available in error" (310). In *Commonwealth* v. *Hayden*, 4 Gray, 19, one of the jurors requested to be excused because he lived in the same town with the defendant. In answer to questions from the Judge, the juror said he had not formed or expressed any opinion in regard to the case, nor had he any interest or bias in relation thereto. The Judge said the reason assigned " was not of itself a sufficient excuse; but, in the exercise of his discretion,

directed the juror to leave the panel and a supernumerary to take his place. The defendant objected, and contended that as that juror was unprejudiced and not disqualified, the defendant was entitled to be tried by the panel as alphabetically arranged " (19.)

On appeal, the Court say : " In the third of these cases (Hayden's) we have no doubt that it was within the authority of the Court, in its discretion, to excuse the juror for the reason assigned, although he was not legally incompetent to sit in the trial" (21). In Georgia, neither deafness nor sickness is, under the statute, a disqualification for serving on a jury, but the Court may discharge a juror on these grounds without consulting the prisoner. (*Jesse* v. *State*, 20 Geo. 164.) In *State* v. *Benton*, 2 Dev. and Bat. Law R. 221, the Court say : " Every Court has, as we apprehend, the power, of its own motion, to cause to be withdrawn from the jury those whom it believes not qualified to discharge the duties required from jurors. * * * But when the Court is thus acting for its own satisfaction, it does not adjudicate between the parties. Neither can assign for error that one of the panel has been withdrawn by order of the Court without adequate cause." (See also, *People* v. *Ferris*, 1 Abb. N. S. 197 ; *Stewart* v. *State*, 1 O. St. 68 ; *Pierce* v. *The State*, 13 N. H. 555 ; *Thomas* v. *State*, 27 Geo. 295.) Thus, it appears, in many instances, parties not positively disqualified under the law, yet, in fact, not qualified or fitted to discharge the duties of jurors in the given case, and in some cases where there was really no sort of objection, Courts have discharged them in the exercise of their discretion, and their action has been affirmed on appeal. No case to the contrary, other than as cited, has been brought to our notice.

In all the counties of this State but six, a want of sufficient knowledge of the language in which the proceedings are had, is an absolute disqualification. In those six counties, such want of knowledge of the language is not a legal disqualification which entitles a party to have a juror excluded, but still, it is for the Court to say, under the circumstances existing at

the time, whether it is proper that a party ignorant of the language should be excused. If there are parties summoned as jurors, speaking two or more different languages, who cannot communicate with each other, it is obviously improper that they should sit together upon the same jury. There would be no means by which they could communicate with each other in the jury room.

In this case there is no complaint that the defendant was not tried by a jury of good and lawful men; and, while we do not say that a judgment would not be reversed, where a Court arbitrarily, or wilfully rejects a juror not disqualified under the provisions of the statute, without any reasonable ground upon which to base its action, yet, in this case, there is some reasonable ground for the action of the Court, and there is nothing disclosed in the record to show that the discretion of the Court was not soundly exercised.

Judgment affirmed and District Court directed to appoint a day for carrying the judgment into execution.