THE PEOPLE *v*. MORALES, *alias* YARE YARE.

APPEAL from the District Court of San Juan.

No. 122.—Decided March 24, 1908.

INFORMATION—DEGREE OF CRIME.—Although it is strictly within the province of a jury to determine the degree of a crime, the fact that the degree thereof is stated in the information does not render the same substantially defective nor is it subject to objection on that ground.

TRIAL—IMPANELLING OF JURY.—In the case at bar the procedure followed was that hereinafter set forth: Twenty jurors were drawn or summoned, of which 10 only appeared; the court then ordered that other jurors be drawn and summoned to complete the panel; only 11 jurors competent to act were obtained and it was thereupon ordered that 20 more be drawn and summoned, the panel thereby having been completed; it was held that this is the procedure which should ordinarily be followed in impanelling a jury in this Island.

ID.—The law does not give the accused a right to demand that a complete panel of 24 jurors should be available before proceeding to select therefrom the 12 jurors which shall try his case.

ID.—Where the ordinary panel is exhausted and a special panel is cited, a general objection thereto on the ground that all the persons whose names were drawn were not cited will not avail the defendant, and an objection of this character should be overruled.

ID.—OBJECTIONS TO MEMBERS OF A JURY AND TO THE PROCEDURE FOLLOWED IN SECURING A PANEL.—All of the objections made to members of a jury or

against the procedure followed by the court in the drawing thereof, and the citation or impanelling of a jury, must be made in the nature of challenges, either of the jurors individually or of the whole panel, in accordance with the provisions of sections 230 and 231 of the Code of Criminal Procedure.

ID.—Unless it appears from the record that the defendant had exhausted his peremptory challenges, he cannot on appeal attack the procedure followed in forming the jury, on the ground that the persons to whom objection had been made formed a part of the jury.

INFORMATION—SUFFICIENCY.—An information is sufficient if the crime is therein charged in clear and distinct terms, and in ordinary concise language without repetition and in such terms that any person may understand what is intended.

ID.—Where, from the information, it appears that it is based on the testimony of witnesses duly sworn, it is not necessary to state therein before what officer they were so sworn.

ID.—OBJECTIONS.—Any objection which the defendant may wish to raise to the information must be made in accordance with the provisions of sections 152 and 154 of the Code of Criminal Procedure.

EVIDENCE—STATEMENTS MADE BY PERSONS IN PERIL OF DEATH.—Statements made by a person immediately before his death are admissible in evidence against a defendant, if it is shown that such person was aware that he was in a critical condition and in eminent danger of death.

ID.—CIRCUMSTANCES SURROUNDING THE COMMISSION OF A CRIME.—All the circumstances surrounding the commission of a crime are material and may be made the object of evidence; a trial court must exercise a wide discretion in the admission of evidence of this character, taking great care not to impair the rights of the accused.

ID.—EXAMINATION OF WITNESSES.—Although the examination of witnesses should generally be left to counsel, nevertheless the court may interrogate them for the purpose of clearing up fundamental points, and to aid him in preparing his instructions.

ID.—CONFESSION OF ACCUSED.—The confession of his crime made by the accused to other persons is admissible in evidence against him when such a confession is freely and voluntarily made without coercion or influence of any kind brought to bear.

ID.—CASES IN WHICH THE ACCUSED OFFERS HIMSELF AS A WITNESS.—Although no accused may be compelled to testify against himself, however, if he offers himself as a witness, he must submit to cross-examination by the prosecuting attorney and the trial court.

The facts are stated in the opinion.

*Mr. Texidor* for appellant.

*Mr. Rossy, fiscal,* for respondent..

MR. JUSTICE MACLEARY delivered the opinion of the court.

This prosecution was begun in the District Court of Mayagüez on the 8th day of August, 1905. On a trial in that court the defendant was convicted of murder in the first degree, and

sentenced to suffer death, and on an appeal to this Supreme
Court, on the 30th day of June, 1906, the judgment was re-
versed, for errors in the charge of the trial court, and the
cause remanded for a new trial. Then a change of venue
was taken from the District Court of Mayagüez to the District
Court of San Juan, and the case was prosecuted to final judg-
ment in the second section of that court. On the 11th of May,
1907, after a jury trial and a verdict of guilty of murder in
the first degree, judgment of conviction was rendered against
him, and on the 15th of the same month, the defendant was
sentenced to suffer the penalty of death. On the 20th of
June an appeal was taken from that sentence to this Supreme
Court, and the record was filed herein on the 13th of Novem-
ber last. After the necessary delays and preparations of
briefs the case was heard in this court on the 29th of January,
1908, on oral argument of the fiscal, the counsel appointed to
defend the appellant being absent, and submitted on the writ-
ten briefs of both parties. The information reads as follows:

"In the name and by the authority of the People of Porto Rico.—
United States of America, s. s.—The President of the United States.—
*The People of Porto Rico* v. *José Morales, alias Yare Yare, and
others.*—In the District Court of Mayagüez on the 8th of August,
1905.—The *fiscal* files an information against José Morales, *alias* Yare
Yare, Miguel Lojo y Vidal, *alias* Chencho, Pedro Vidal Goico, José
Reyes Alvarez, Prudencio Vidal Estruch, Rafael Pesante Gomez and
Antonio Paz y Santos, for the crime of murder in the first degree,
committed as follows: Said José Morales, *alias* Yare Yare, illegally
killed Mr. José Adolfo Pesante, while the latter was sitting down in
a chair on a sidewalk in front of the drug store of Mr. Rafael Arri-
llaga. This murder having taken place between the hours of 9 and
10 o'clock on the 2d of July current in the town of Añasco, of the
judicial district of Mayagüez, Porto Rico, the murder being effected
in a willful, deliberate and premeditated manner the murderer show-
ing himself to have a perverted and malignant heart, this killing being
caused by means of a knife inflicting upon said José Adolfo Pesante
a wound between the eighth and ninth intercostal spaces on the he-
patic region, said wound reaching the liver, from which he died on the

next day. Said Miguel Lojo Vidal, *alias* Chencho, Pedro Vidal Goico, José Reyes Alvarez, Prudencio Vidal Estruch, Rafael Pesante Gomez and Antonio Paz Santos, are principals in the crime committed, since they advised and incited, in a malicious and premeditated manner, said José Morales, *alias* Yare Yare, to the commission of the crime referred to in the manner aforesaid contrary to the law in such cases provided and against the peace and dignity of the People of Porto Rico.—Benjamin J. Horton, *Fiscal* of the District.

"This information is founded on the testimony of witnesses examined under oath, and I solemnly believe that there is a just cause to file the same before the court. Benjamin J. Horton, *Fscal* of the District.

"Signed and sworn to before me today, the 8th day of August, 1905.—Francisco Llavat, Secretary of the District Court of Mayagüez."

This information was attacked by the defendant's counsel because it sets out the degree of murder of which the party was accused; it being contended that the *fiscal* should not indicate in any manner the degree of murder charged against the defendant, but that it is the sole province of the jury to determine the grade of the offense, and to say whether the defendant is guilty of murder in the first degree, or murder in the second degree. It is certainly the duty of the jury to make such a finding in the verdict, but that does not relieve the district attorney of his duty to apprise the defendant of the charge made against him, and to set it forth in the information, in plain and intelligible words. Had the information failed to charge him with murder in the first degree the defendant might possibly have claimed that he could have been convicted of no greater crime than murder in the second degree, because no greater crime was charged. This was probably the motive which actuated the *fiscal* in using the rather unusual allegation of which complaint is made. The most that can be said against the designation of the degree of murder, of which the defendant was accused, being expressed in the information, is that it is surplusage and may be disregarded. This is the doctrine declared in California. (*People* v. *Nichol,* 34 Cal.; 217; *People* v. *King,* 27 Cal., 512.)

If there was any error in making this allegation in the information it was not prejudicial to the defendant and forms no ground for a reversal of the judgment. The functions of the district attorney and of the trial jury, in a criminal case, are quite different and distinct, and they do not interfere with each other when properly performed, as they have been in this case.

Several objections are also made to the method in which the jury was impanelled by the trial court, and they may all be considered together. The court used the following method: A regular venire of 24 jurors was drawn and summoned, of whom only 17 appeared. The court thereupon ordered others to be drawn and summoned to complete the panel. Out of these only 11 competent jurors were obtained and 24 more were drawn and summoned and the panel completed. This is the regular mode of procuring a jury in all criminal cases in Porto Rico, and is similar to the California method. In the State of California, the Supreme Court in considering this question in substance says, in criminal cases, in forming the jury, 12 names must be drawn from the box containing the names of the qualified jurors, and the defendant may examine the whole 12 before exercising his right of peremptory challenge as to any of them, and those not challenged or excused must then be sworn to try the case; after which as many more names as will make up the deficiency must be drawn from the box; when the same process will be repeated until the jury is complete. (*People* v. *Scoggins,* 37 Cal., 680; *People* v. *Russell,* 46 Cal., 680; *People* v. *Iams,* 57 Cal., 115; *People* v. *Hickman,* 113 Cal., 80.) But the accused made the following exceptions to the proceedings used in the selection of the jury:

The first of these exceptions was occasioned on account of the fact that out of the 24 jurors summoned only 17 were present; the attorney for the accused made objection to the panel, basing the same on the fact that the 24 jurors required

by the law were not present, it being as he contends a right of the accused to have the 12 jurors drawn from a panel of 24. It was observed by the court, at the opening of its session on that day, that some of the regular jurors were lacking, and he therefore ordered that other men be summoned in order to complete the panel. It does not appear from the record why the jurors did not attend.

The law does not give the defendant the right to demand a full panel of 24 jurors before selecting 12 jurors or a less number therefrom as claimed. He has a right to be tried by an impartial jury fairly selected, but the summoning and impanelling of the jury is necessarily dependent, to some extent, on the exigencies arising from the situation and residence of the persons whose names form the jury list, and the ability of the marshal to find them in time to render service, without delaying the business of the court. Accused persons have no right to delay the proceedings of the court, to an unnecessary extent, merely to gratify a whim or to procure the attendance of some particular person as a juror.

The second exception to the formation of the jury was occasioned because the regular panel that was summoned to serve during the term, having been exhausted, the judge ordered the secretary to call the names on the list and to administer the oath to the special jurors present, in order that they should answer questions as to their qualifications; and the attorney for the accused objected to this, alleging that the court should not proceed to the formation of a special panel without having first exhausted the regular panel.

This court is unable to see any error in this action of the trial court and none is specially pointed out by the counsel for the defendant. Nor is any harm shown to have been suffered by the accused from this method pursued by the court below.

The third exception taken by the defendant's counsel to the formation of the jury was because the attorney for the

accused read a motion in which he requested the court to nullify an order of the court in which the summoning of a new panel was directed and this motion was overruled.

This is virtually a renewal of the second exception by a motion which was overruled. This ruling was entirely regular and proper and affords no ground of complaint.

The fourth exception taken by the counsel for the defendant to the formation of the jury was the following: That the court overruled a motion presented by the attorney for the accused in which he made objections to the special panel because it does not appear that all the individuals who composed that panel had been notified.

It was not a good reason to reject the special panel because all the persons drawn were not summoned. The delays incident to the formation of a jury, in criminal cases, are sufficiently numerous and inconvenient already, without multiplying them as suggested; such delays not serving any useful purpose, nor preserving any right of accused persons, nor facilitating the administration of justice. The court in this particular used all the care required to comply with the statute and protect the rights of the accused. The methods pointed out by the law should be followed, of course; but business must progress, and trials have an end, and justice be done.

The fifth exception taken by the counsel for the defendant to the formation of the jury was that the court, upon annulling the drawing of the name of the juror Adolfo Marchesi, who had not been present at the proper time, ordered the secretary to call the names upon the list anew, with the purpose of seeing how many of the new jurors had come, and who they were; and the attorney for the accused made objections to the adding of new names to the second panel in the jurors' box of persons who had not been there since the beginning.

The juror Adolfo Marchesi, whose selection was objected to as irregular, was finally challenged for cause, both by The

People and by the defendant, because he was not a taxpayer; and accordingly he was excluded from the panel; so that if there was an error incurred by the court in accepting him, it was a harmless one. However no good reason is shown for maintaining as erroneous this action of the trial court in the method of selecting the juror; nor is any prejudice shown to the rights of the accused suffered from the ruling. There was no error in the proceeding.

The sixth exception presented by counsel for the accused to the formation of the jury was because after the jury had commenced to be formed, at which formation only 17 jurors had appeared, the court proposed to the *fiscal* and attorney for the accused to draw 24 jurors more, with the purpose of completing the number of 12, considering the peremptory challenges that the parties could make use of at the trial, the court ordering the drawing of the names.

If there was any error in this action of the court it was favorable to the defendant, and forms no basis for any complaint or objection on his part. The judge has the discretion for such action confided to him by the statute; and no abuse of his discretion is shown in the record. But his action and ruling in the matter were correct.

The seventh exception taken, to the formation of the jury, by the defendant's counsel, was because the court declared the jury to be duly formed and proceeded to have the jurors take the oath required by law to render their verdict.

This is a summary of all the other exceptions previously made, and as they have been shown to be futile the last must fall with them. Objections made to a jury, or to the method used by the court in causing the same to be drawn, summoned or sworn, are called challenges, and are to be taken as prescribed in sections 230 and 231 of the Code of Criminal Procedure. Five out of the first six foregoing objections to the formation of the jury should have been made by challenges to the panel, and the other by a challenge to the individual

juror, which was in effect made in the case of the juror Marchesi. As regards the challenges to the panel, which were formerly called challenges to the array, our statute provides that: "A challenge to the panel can be founded only on a material departure from the form prescribed in respect to the drawing and return of the jury, or on the intentional omission to summon one or more of the jurors drawn." Code of Criminal Procedure, section 212. No such departure from prescribed forms is shown nor is it pretended that there was on the part of the marshal such an intentional omission. This would be a sufficient reason to dispose of five out of six objections presented to the impanelling of the jury. The other two objections are based on no better foundations, as it has already been shown.

It is not intended by the statute to permit counsel to interpose frivolous objections at every step taken by the trial court in the formation of the jury. But the object of the law is to protect the rights of the accused person in securing an impartial jury for the trial of his case, and the rights of the people in avoiding the selection of any juror who is not duly qualified to serve as such. These rights are carefully guarded in the statute, which should be closely followed, not only by the trial court, but by the *fiscal* and the counsel for the accused. The procedure prescribed by law can be found in chapter two of title seven of the Code of Criminal Procedure, and is very plain, and there is no good reason known to us to depart from the prescribed method.

Several jurors were excused by the court from attendance and examination as to their qualifications; but in the absence of any showing to the contrary, appearing from the record, it must be presumed here that these excuses were made and accepted as prescribed in section 190 of the Code of Criminal Procedure. It is held in California that the court may, of its own motion, for any good reason, excuse a qualified juror from sitting on the panel in a criminal case, and

this will not be error if the defendant is tried by a competent jury of lawful men. A party on trial is entitled to a lawful jury, but he is not entitled, as a matter of absolute right, to have the first juror who is called and possesses all the statutory qualifications, to sit in his case. (*People* v. *Arceo,* 32 Cal., 40; citing 2 Mason, 91; 10 Grattan, 767; 1 Port, 298; 4 Gray, 19, and 20 Ga., 164.) The case of Arceo is cited with approval by the same court in *People* v. *Manahan,* 32 Cal., 73.

There is nothing in the whole procedure used in the formation of the jury, which tried the case at bar, that resulted in the selection of an objectionable juror. The peremptory challenges of the defense do not appear, from the record, to have been exhausted, and no juror was impanelled to whom any definite objection was presented. Unless the defendant has exhausted all his peremptory challenges he cannot complain that any objectionable juror has been placed upon the panel before which he was tried, and the fact that his challenges were exhausted must affirmatively appear from the record. This matter is settled satisfactorily to our minds by the Supreme Court of the United States in the following language:

"The complaint is that the trial court, acting under this statute and in accordance with its requirements, compelled the petitioners against their will to submit to a trial by jury that was not impartial, and thus deprived them of one of the fundamental rights which they had as citizens of the United States under the National Constitution, and if the sentence of the court is carried into execution they will be deprived of their lives without due process of law.

"In *Hopt* v. *Utah,* 120 U. S., 430, it was decided by this court that when 'a challenge by a defendant in a criminal action to a juror, for bias, actual or implied, is disallowed, and the juror is thereupon peremptorily challenged by the defendant and excused, and an impartial and competent juror is obtained in his place, no injury is done to the defendant, if until the jury is completed he has other peremptory challenges which he can use.' And so in *Hayes* v. *Missouri,* 120 U. S., 68, 71, it was said: 'The right to challenge is the right to reject, not to select a juror. If from those who remain an

imparital jury is obtained, the constitutional right of the accused is maintained.' Of the correctness of these rulings we entertain no doubt. (*Spies* v. *Illinois,* 123 U. S., 168.)

The jury by whom the defendant was tried was one of his own selection, and no right of the accused, in the method followed in forming the jury, was disregarded. The trial court followed closely the method prescribed in chapters one and two of title seven of the Code of Criminal Procedure, in the drawing, summoning and impanelling of the jury. The trial was had, as shown by the record, before a jury of unbiased and impartial men, duly qualified under the law to act as jurors, and no defendant could demand more consideration in selecting and impanelling the jury than the defendant had from any trial court. There was at least no material error committed by the court in the formation of the jury, and all exceptions to its actions in so doing were properly overruled.

The defendant's counsel also objected to the introduction of any evidence against the accused; first, because the information did not set forth facts sufficient to determine the crime of which the defendant was accused, and second, because the information does not show that it was based on the testimony of witnesses duly sworn by any person competent to administer oaths in accordance with the requirements of the law. With respect to the first point, it may be said that the information clearly charges the crime of murder in the first degree, of which the defendant was convicted, and in the language of Chief Justice Sanderson, in his opinion rendered in the *King case,* 27 Cal., 511: ''It sets forth the act charged as the offense clearly and distinctly in ordinary and concise language, without repetition and in such a manner that any person can know and understand therefrom what is intended,'' which is all that is necessary; and as to the second, it appears from the information that the same was based on the testimony of witnesses duly sworn, and it was

unnecessary to show therein before what officer they were sworn. This last point has been heretofore decided by this court in accordance with this construction of the statute, as will appear in the case of *The People* v. *Tomás Rivera,* 9 P. R. Rep., p. 395, decided on the 28th of November, 1905, and *The People* v. *Alomar,* 10 P. R. Rep., p. 282, decided on the 15th of March, 1906, and others disposed of since those dates. The presumption is in favor of the correctness of the proceeding on the part of the *fiscal* preparing the information in this particular, unless some error is shown by the party objecting thereto. These exceptions are not well taken. Besides, the objections of the defendant, although professedly made to the introduction of evidence, are really in the nature of a demurrer to the information and should have been presented in accordance with sections 152 and 154 of the Code of Criminal Procedure; and on that ground they could have been properly disregarded, or overruled. The counsel for the defendant also presented several exceptions to the evidence given by the witnesses taken during the trial, which will be examined in detail. The first exception taken to the testimony of any witness was on a motion to strike out the dying declarations of José A. Pesante, as narrated by Dr. Eduardo Casaldúc, on the ground that it was not sufficiently shown that they were made in the view of impending death. In order to be fully informed on this point the trial judge very properly propounded further questions to Dr. Casaldúc, and the answers entirely established that the dying man fully realized his precarious situation and that death was immediately impending. Then it was that the judge overruled the motion of the defendant's counsel and allowed the dying declarations of Pesante to stand as a part of the evidence. In this ruling there was no error.

The second exception taken to the testimony relates to the declaration of the witness Juan Pasos, a coachman. This witness testified in regard to a valise, which the defendant left at a house in Mayagüez, and to the coin which the ac-

cused had paid to the hackman who transported him thither. These matters were considered immaterial by counsel and objected to on that account. This objection was properly overruled. All the attending circumstances surrounding the case are material in an honest endeavor to determine the great question of the guilt or innocence of the accused, and the trial court must be permitted an ample discretion in the admission of evidence, and unless some infringement of the defendant's rights is shown to have occurred the exercise of that discretion, within reasonable limits, will not be disapproved by this court.

The third exception to the testimony was taken because the judge asked the witness Rafael Arrillaga, the druggist, concerning the method in which the act of the defendant in wounding the injured man was accomplished, the answer showing that the fatal blow was struck silently. This was certainly admissible, and although the trial judge will, and should generally, leave the examination of the witnesses to the counsel engaged on each side of the case, yet he may, when he thinks proper, interrogate a witness on a material point which is not clear to his mind, in order to enable him to properly prepare his instructions to the jury, which must conform to the evidence adduced on the trial of the case. The fact that the assault was made silently was certainly a material fact in view of other testimony adduced on the trial.

The fourth exception taken to the testimony was because the trial judge allowed the witness Pablo Verga Ponce, an employe of the district attorneys's office, to testify concerning statements made to him by the accused in the jail at Mayagüez. This brings up the whole question of the admissibility of confessions in criminal trials. This important matter was very fully discussed in the *Panchito case* and also in the *Kent case*. The latter was decided by this court on the 5th of March, 1906, and an appeal taken therein was dismissed by the Supreme Court of the United States for want

of jurisdiction. According to the principles there laid down by this court, and founded on the best authorities, there was no error incurred by the trial court in admitting the state- ments made by Morales, in the jail while awaiting trial, nor by *Panchito* after his arrest. They appeared to be entirely voluntary, which is all that the law requires to render con- fessions admissible in evidence against the person making them. (*Bram* v. *United States,* 168 U. S., 533; *Wilson* v. *United States,* 162 U. S., 613; *Hopt.* v. *Utah,* 110 U. S., 584; *People* v. *Oliveria,* 127 Cal., 381; *People* v. *Jim Ti,* 32 Cal., 60.)

The fifth exception, taken to the admission of evidence, relates to a question propounded by the trial judge to the accused while testifying in his own behalf. It was designed to ascertain by this question how it was that the defendant still had forty-four (44) dollars after being 18 days in Maya- güez hunting work and spending money. The exact form of the question does not appear in the record. This is the most serious matter which appears in the progress of the trial and merits the closest examination. No person accused of crime can be required or compelled to be a witness against himself; · but under the statute he can testify in his own be- half, if he chooses so to do. However, if he offers himself as a witness he must submit to cross-examination by the State's attorney, or by the trial judge. Mr. Chief Justice Waite, in a very celebrated case, announces the opinion of the Supreme Court of the United States on this subject in the following words:

"We come now to consider the objection that the defendant Spies was compelled by the court to be a witness against himself. He volun- tarily offered himself as a witness in his own behalf, and by so doing he became bound to submit to a proper cross-examination under the law and practice in the jurisdiction where he was being tried. The com- plaint is, that he was required on cross-examination, to state whether he had received a certain letter, which was shown, purporting to have been written by Johann Most, and addressed to him, and upon his

saying that he had, the court allowed the letter to be read in evidence against him.   This, it is claimed, was not proper cross-examination. It is not contended that the subject to which the cross-examination related was not pertinent to the issue to be tried, and whether the cross-examination must be confined to matters pertinent to the testimony in chief, or may be extended to the matters in issue, is certainly a question of State law as administered in the courts of the State, and not of Federal law.''   (*Spies* v. *Illinois*, 123 U. S., 180.)

Then, under the view taken by the high court, whose opinion has just been quoted, the cross-examination of the accused who had testified in his own behalf was entirely admissible and constitutes no error.

No exceptions were taken to the charge given by the court to the jury.   Nevertheless we have carefully examined the same and find it an able and impartial exposition of the law in regard to the unlawful killing of a human being, and especially in respect to murder.   The appellant could not properly complain of it in any particular.

A careful examination of the whole record, aided as far as possible by the briefs of counsel on both sides, does not enable us to discover any material error in the conduct of the trial, but shows that the rights of the defendant had been carefully guarded at all points by the trial court, and that his conviction was legal and just.   There being no error in the record, the judgment rendered by the second section of the District Court of San Juan, on the 15th of May, 1907, condemning José Morales to suffer the death penalty, should be in all things affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.