THE STATE v. THOMAS SECHRIST, Appellant.

Division Two, March 15, 1910.

1. **JUDGE DISQUALIFIED: Another Called.** Where the regular judge is disqualified, and calls in the regular judge from another circuit to try the case, and he is disqualified by defendant's affidavit of prejudice, the regular judge of the court is authorized to call in the regular judge of another circuit, and when such judge appears and the cause is continued and he cannot at the next term try the cause because of the interference of a regular term of court in his own circuit, the regular judge of the court is authorized to call in the regular judge of still another circuit, and such judge has authority to try the case.

2. **RAPE: Several Acts: Election.** It is proper, in the trial of defendant for the rape of his daughter, sixteen years old, to admit evidence of acts of sexual intercourse committed prior to the date charged in the information; and if the court instructs the jury that such prior acts are to be considered only as tending to prove or disprove the act for which a conviction is sought, a refusal by the court to require the State to elect upon which act it would seek a conviction is not reversible error.

3. **REMARKS OF ATTORNEY.** One of the attorneys for the State in his argument to the jury said: "Any man that will commit a rape on a girl such as this, is a coward"—the girl being defendant's sixteen-year-old daughter. *Held*, no error.

4. **RAPE: Insufficient Evidence: Irreconcilable.** The statutes on incest and rape attest that these crimes are within the experiences of courts and legislatures, and to authorize the Supreme Court to reverse the judgment because of the weakness of the testimony, the verdict must be irreconcilable with human experience; and though the record presents a case that challenges credulity, yet if the testimony of the prosecutrix is true, and is not irreconcilable with human experience, and if true defendant is guilty, the Supreme Court will not interfere.

Appeal from Greene Criminal Court.—*Hon. A. W. Lincoln*, Judge, and *Hon. John T. Moore*, Special Judge.

AFFIRMED.

*Elliott W. Major*, Attorney-General, and *Chas. G. Revelle*, Assistant Attorney-General, for the State.

(1) The position assumed by defendant's counsel was that since the regular judge had disqualified himself he was without any authority to call in Judge Moore after Judge Casteel had been disqualified by affidavit and Judge Johnston had assumed the duties of special judge but was unable to act further. This precise question was before the court in State v. Gillham, 174 Mo. 671, and the contention here made was ruled adversely to defendant. The propriety of the court's action is also fully sustained by State v. Silva,

130 Mo. 456, and State v. Hudspeth, 159 Mo. 210. (2) In the motion for new trial, defendant also complains that the court limited the time of counsel's argument in his behalf to two hours and a half, but the record fails to support the allegation to this effect. There are no entries evidencing such an action, and no objections or exceptions preserved. This assignment cannot therefore be considered. State v. Williams, 147 Mo. 18; State v. Grant, 144 Mo. 66; State v. Feeley, 194 Mo. 315. (3) Before any testimony was offered, defendant requested that the State be required to elect upon which act of intercourse it would seek a conviction, it appearing that the case had been once tried and the prosecuting attorney was familiar with the facts. The court denied this demand and defendant duly excepted. The motion to require the State to elect was not renewed at any subsequent stage of the trial, but at the close of the whole testimony defendant asked the court to strike out all the testimony relating to the acts of intercourse, or attempted intercourse, which took place prior to April 19th, this being the day when defendant committed the act for which he was being prosecuted. The record discloses that, throughout the trial, both the State and defendant proceeded upon the theory that the act committed by defendant on April 19th, which was the date charged in the information, was the particular one upon which defendant was being tried, and the State was seeking a conviction. The instruction given by the court was in line with this admitted theory, and properly defined and limited the purpose and effect of the evidence of the prior acts. No testimony was offered of any subsequent act, and in this State there is no longer any doubt as to the admissibility in evidence of the prior acts. The action of the court in this respect was in keeping with the decisions of this court. State v. Scott, 172 Mo. 542; State v. Palmberg, 199 Mo. 240; State v. Prewitt, 202 Mo. 49.

GANTT, P. J.—This is a prosecution for rape, commenced by the prosecuting attorney of Greene county, by information, charging defendant with rape of his daughter, a girl about sixteen years old, in Greene county, on April 19, 1907. Defendant was arraigned and pleaded not guilty and was convicted and sentenced to the penitentiary for seven years.

His first trial resulted in a mistrial, owing to a disagreement of the jury. Prior to the second trial, Judge Lincoln, the regular judge of the criminal court, voluntarily disqualified himself and called Judge B. J. Casteel, of the Buchanan County Criminal Court, who appeared at the time named, to preside in the case, but defendant filed an affidavit of prejudice on the part of Judge Casteel, duly supported by compurgators, and thereupon Judge F. C. Johnston of the Twenty-fourth Circuit was duly requested to try the cause and it was set down for August 26, 1907. Upon application of the defendant, the cause was continued to December 2, 1907. On the last mentioned date, Judge Johnston was unable to preside on account of business of his own circuit, and thereupon Judge Lincoln called in Judge John T. Moore, of the Thirty-first Circuit, and he appeared and assumed jurisdiction on the day fixed, to-wit, December 3, 1907. Defendant at the time objected to the order calling in Judge Moore, on the ground that Judge Lincoln had no authority to make the order and duly saved his exception.

After the panel of forty had been secured, defendant filed his motion to quash the same, because Judge Moore had no authority to make the order for said *venire,* because he had not been lawfully selected to try said cause, which motion was overruled and defendant excepted.

The evidence tended to show that defendant was a widower. His wife died about 1900, in childbirth. After her death, he continued to reside in Springfield

226 Sup—37

with his children, four sons and one daughter. Edgar, the oldest son, was twenty-two years old; Walter, twenty; Fannie, sixteen; George, thirteen; and Floyd, nine years, at the date of the trial.

At the date of the alleged rape, this family was living in a three-room house in Springfield. The two oldest sons were employed in a furniture factory and left home for their work about six o'clock, as was their custom every work day.

The testimony for the State then tended to prove that soon after the older boys left home, the defendant sent the two youngest into the city to gather slops for some hogs he was raising, and they remained away until about noon. After they left, the defendant compelled the girl, Fannie, to get in bed with him, by threatening her with a shotgun if she disobeyed him. He then and there, under these circumstances, had carnal connection with her.

About 12:15 the two young boys returned and found the door locked, and she got out of bed and let them in.

After preparing their dinner for them, Fannie, the daughter, left the house and went immediately to the police court, and made complaint against defendant. After she left, defendant took his shotgun and went to the furniture factory and called for one of his sons and told him that the girl had gone and that there was trouble at the house. Defendant suggested to the son that they had best not return by the public road or street, as they might meet the officers, and they went home by a devious route. Defendant was somewhat under the influence of liquor, and seeing two boys, said, "There are the officers now," but being informed by the son they were boys, they went on home and defendant was arrested immediately upon reaching his home.

The evidence tended to show that soon after his wife's death, defendant began to have intercourse with this daughter, threatening to kill her if she ever divulg-

ed it, and himself. It was also developed in evidence that defendant seldom permitted his daughter to leave him when she was not accompanied by members of the family, and in this connection he told her that he was afraid she would forget herself and tell of his conduct towards her if she were permitted to go alone. She did not attend school and was seldom seen with other children. There were but two outside doors to the house in which these parties lived, and these were generally closed and the window blinds down when defendant and his daughter were there alone.

His older sons testified that when they returned home from their day's work, they frequently found the doors locked, and the defendant and his daughter there alone.

The evidence also disclosed that by threats and the use of the shotgun, defendant compelled his daughter to admit that she had been unduly intimate with two of her brothers, and that by the same means he attempted to force a similar confession from one of his sons, but in this failed.

Dr. Woody testified that on April 20th, he made an examination of the prosecutrix, and found that she was well developed for a girl of her age, her physical condition indicating that she had frequently had sexual intercourse.

On the part of the defendant, the testimony tended to show that for some years defendant had been afflicted with bodily infirmities, and that by reason thereof he remained at his home a greater portion of the time. He testified that at the time of the alleged crime, his condition was such that he had neither the desire nor the capacity to have sexual intercourse. He further testified that at no time had he been illicitly intimate with his daughter, but that on one occasion she had confessed to him that at several different times she did have intercourse with her older brothers. He became

indignant at this and threatened to have her sent to the reform school.

There was also evidence to the effect that he did not prevent her from going to such places, and with such persons as she saw fit, and that in fact she frequently went to various places without being accompanied by a member of the family, and was permitted to and did associate with other children. He usually kept at the house, or carried with him when out, a shotgun or pistol, because some years prior thereto he had received a letter which threatened him with certain punishment if he did not go to work.

Several witnesses testified to his good reputation for morality and veracity. In rebuttal, the State offered the testimony of several witnesses to the effect that defendant's reputation for morality was bad.

I. While the learned counsel for defendant assailed Judge Moore's right to preside on the trial upon the invitation of Judge Lincoln, the regular judge of the court, after the inability of Judge Johnston to try the cause had appeared, they have not favored us with any authority for their position, nor shown any reason for their construction of section 2597, Revised Statutes 1899, by virtue of which Judge Lincoln acted in requesting Judge Moore to preside.

But the point was settled by this court in State v. Gillham, 174 Mo. 671, in favor of the order. We can add nothing to what was then said and the exception to Judge Moore's right to preside and order the *venire* must be and is disallowed. [State v. Silva, 130 Mo. 1. c. 456, 459; State v. Hudspeth, 159 Mo. 1. c. 210, 211.]

II. It is insisted that the court erred in refusing to set aside certain of the panel of forty, on their *voir dire* examination. As no challenge was made to or any exception saved as to any of those named except W. E. Thompson and Roy Patterson, the challenges as to these two only will be considered.

Mr. Thompson stated that he had not heard any of the testimony on the first trial, nor talked with any witness who claimed to know the facts. From reading the newspaper accounts, he had formed an opinion at the time. He was unable to state how that opinion would affect him, if he was selected, but he felt confident he could render a fair and impartial verdict upon the testimony; that he had no prejudice to defendant.

By statute in this State, it is expressly provided that "it shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appear that such an opinion is founded only on rumor or newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn." [Sec. 2616, R. S. 1899.] The juror was competent. [State v. Church, 199 Mo. 605; State v. Robinson, 117 Mo. 649; State v. Walton, 74 Mo. 270; State v. Van Wye, 136 Mo. l. c. 243.]

As to the juror, Roy Patterson. He testified he had not formed or expressed any opinion as to the guilt or innocence of the defendant. Had read the newspapers, but formed no opinion from so doing. He did hear a part of the testimony of Fannie Sechrist. He came in the court room while counsel for defendant was cross-examining her. He heard none of the examination in chief, and from the fragment of her testimony on cross-examination, he formed no opinion whatever as to the guilt or innocence of defendant. We think the juror was not disqualified. [State v. Riddle, 179 Mo. 287.]

III. As to the point that the court limited the time for argument on a side to two and one-half hours, it is sufficient to say the record does not sustain this assignment.

IV. The defendant moved the court to require the State to elect upon which act of intercourse it

would seek a conviction, and the court declined to do so and exception was taken.

The cause was tried on both sides with reference to the act committed on April 19, 1907, the date charged in the information. No testimony was admitted as to any subsequent act. The prior acts were admissible. [State v. Scott, 172 Mo. l. c. 542; State v. Palmberg, 199 Mo. l. c. 240, 252.]

On this branch of the case, the court instructed the jury as follows: "You are instructed that you cannot convict the defendant, Thomas Sechrist, upon any act of sexual intercourse between the defendant and the witness, Fannie Sechrist, committed prior to April 19, 1907, if you find that any such acts were committed, but you are to consider the evidence of such acts, if any, only as such evidence tends to prove or disprove the act of sexual intercourse upon which the conviction is sought."

In view of this showing, we think there was no reversible error in the action of the court in denying the motion to require an election.

V.   Complaint is made of this language of one of the attorneys for the State: "Any man that will commit a rape on a girl such as this, is a coward." We think there is no merit in this point.

VI.   The remaining assignments of error may be treated under one head, to-wit, that the testimony of the prosecutrix is so incredible, unreasonable and improbable, that the circuit court should have instructed the jury to acquit the prisoner, and that this court should reverse the judgment and discharge the prisoner.

That the transcript presents a state of degradation that challenges credulity must be conceded, and yet our statutes on incest and rape attest that these crimes are within the experience of our courts and Legislatures. To justify this court in reversing a case

upon the weakness of the testimony, the verdict must be irreconcilable with human experience.

Considering the islolation of this prosecutrix from any female relative, her mother dead, and the evidence of immorality of the father; the conflict between the father and the sons as to material facts; that the jury and the circuit judge before whom the cause was tried, had the opportunity to see and hear the testimony of the prosecutrix, an opportunity we cannot have, however loth we may be to believe any father so degraded and brutal, we do not feel justified in reversing this judgment upon the weight of the evidence. The jury believed the testimony of the prosecutrix, and if that evidence was true, the defendant deserved the severest penalty the law prescribes. He had the benefit of able and industrious counsel and a trial in the county where he lived for many years. The facts of this case are radically different from those in State v. Goodale, 210 Mo. 275, which was reversed because the testimony of the prosecutrix was utterly irreconcilable with all the established facts in the case.

After a careful consideration of the testimony, we are constrained to affirm the judgment, and it is so ordered.

*Burgess* and *Fox, JJ.*, concur.