## THE STATE v. A. J. McKINNEY, Appellant.

### In Banc, February 10, 1914.

1. **CHALLENGES: Sick Member of Panel: Substitution: Twenty-Four Hours for Rechallenge.** After the panel of forty had been qualified and the list submitted to the defendant twenty-four hours before the trial, and each party had made his proper challenges, and a trial jury of twelve had been selected but not sworn, and both sides had announced ready for trial, and all the jurors answered to their names except one, who was sick, and who was excused, the sheriff was directed to summon another man, which was done, and the man being found to be qualified was directed to take his seat with the other jurors. Thereupon defendant demanded twenty-four hours in which to challenge the jury as then constituted. *Held,* that it was error

to refuse the demand. The statute (Sec. 5227, R. S. 1909) provides that after forty jurors have been qualified, a list of their names shall be delivered to the defendant at least twenty-four hours before the beginning of the trial, in order that he may have ample time to make his challenges; and to excuse one of the jurors and substitute another and require defendant to go to trial *instanter* is to deprive him of his statutory right. [WALKER, J., dissenting, in a separate opinion.]

2. HEARSAY: Non-prejudicial. The admission of hearsay testimony, though wholly irrelevant, if nonprejudicial, is not material error.

3. CARNAL KNOWLEDGE: Election of Offenses. Where the prosecutrix gives general testimony as to a number of prior acts of carnal knowledge committed against her before she was fourteen years of age, yet if the evidence of those acts is not introduced to prove substantive offenses upon which a conviction may be made to rest, but in corroboration and explanation of the particular offense charged, and the instructions given limit the jury to that one definite offense and the proof is directed to it, there is no error in the court's refusal to require the State at the close of the testimony to elect upon which offense it will rely for conviction.

4. REMARKS OF PROSECUTING ATTORNEY. The meaning of remarks by the prosecuting attorney in his argument to the jury to the effect that "if it were not for the secret of the prison bars you would not have any doubt or trouble in arriving at your verdict," is not discernible, but they contain nothing prejudicial, and are therefore not reversible error.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort*
Judge.

REVERSED AND REMANDED.

*Virgil McKay* and *J. T. McKay* for appellant.

(1) Where in a trial for rape committed on a female under fourteen years of age on a date specified, the prosecutrix testifies to the commission of the offense on that day and to subsequent offenses during a period of nearly a year, it is the duty of the court to confine the consideration of the jury to but one of the offenses, and the State, at the close of its case, should

have been required to elect upon which act it would rely for conviction. State v. Palmberg, 199 Mo. 233. (2) Defendant was entitled to a trial before the twelve men who had been selected according to law or at least he was entitled to twenty-four hours in which to make his challenge as to the last juror selected and sworn. R. S. 1899, secs. 2623, 2624; State v. May, 142 Mo. 135; State v. Hunter, 181 Mo. 316; State v. Holme, 54 Mo. 153; State v. Clark, 121 Mo. 500; State v. Steeley, 65 Mo. 218; State v. Degonia, 69 Mo. 485.

*John T. Barker,* Attorney-General, and *William M. Fitch,* Assistant Attorney-General, for the State.

(1) Under the laws there was no ground for asking the State to elect in this case. But one completed act was proved, viz., August 17, 1907, and the court instructed as to that alone. It was the last act referred to; others only explanatory. State v. Palmberg, 199 Mo. 233; State v. Scott, 172 Mo. 542; State v. Hyde, 234 Mo. 226. (2) Defendant was entitled to twenty challenges (Sec. 5223); the State had eight (Sec. 5224). List of jurors to be furnished defendant twenty-four hours before trial (Sec. 5227). State v. Hunter, 181 Mo. 316. (3) The jury referred to in the statute is a jury of twelve men. Sec. 28, art. 2, Mo. Constitution. (4) Can one not selected as a member of the panel of forty become one of the twelve men constituting the jury? Goodwin v. State, 102 Ala. 87. (5) The testimony of Dave Nelson may have been incompetent; in the light of defendant's cross-examination, and the facts, it cannot warrant a reversal. (6) The appellant objects to the remarks of the prosecuting attorney. State v. Allen, 174 Mo. 698; State v. Rasco, 239 Mo. 579; State v. Fenton, 248 Mo. 482. (7) The trial court cannot be convicted of error in such cases, when he has done all requested by appellant. State v. Kullman, 225 Mo. 632; State v. Chenault, 212 Mo. 137; State v. Murphy, 201 Mo. 697.

WOODSON, J.—This case came into Banc from Division No. Two, on a divided opinion of the judges, as to paragraph four thereof, regarding the rights of the defendant to rechallenge the jury after one of the panel of twelve had become too ill to serve, as will be subsequently stated.

Upon the assignment of the case it fell to my lot to write the opinion of the court.

After a careful reading of the record and briefs of counsel for both parties in the case, as well as the opinion written by Judge WALKER, I fully concur therein, except as to paragraph IV regarding the selection of the jury, as previously stated, to which I dissent.

This view of the case dispenses with the necessity of a restatement of the facts and a reconsideration of all the other errors assigned by appellant.

By permission, I hereto attach said divisional opinion and adopt it as my view of the law of the case, save and except said paragraph IV to which, as previously stated, I am unable to agree.

Regarding the proposition there stated, I will here state my views of the law governing it.

**Challenges of Panel: Substitution: Twenty-four Hours Thereafter.** The simple question is, did the court err in refusing to grant appellant twenty-four hours in which to rechallenge the jury after Conyers had been excused from the panel of twelve and Powell had been substituted?

In my opinion that question must be answered in the affirmative, and my reasons for so stating will follow:

This question is governed by section 2623, Revised Statutes 1899, the same as section 5227, Revised Statutes 1909, which provides that after a list of forty jurors has been found to be qualified to try the case, it shall be delivered to the defendant at least twenty-four hours before the beginning of the trial, in order

State v. McKinney.

that he may have ample time in which to make his challenges.

Counsel for appellant insist that by excusing Conyers from the list and substituting Powell in lieu of him, and compelling him to go to trial *instanter,* the court deprived him of his statutory right of twenty-four hours in which to make his challenges.

On principle it seems to me that if the court can legally excuse one of the panel of twelve selected to try the case, and can immediately before the trial begins substitute another, and thereby deny the defendant the statutory time in which to make his challenges, after the substitution is made, then by parity of reasoning it seems to me that the court with equal authority could discharge the other eleven of the panel and order the sheriff to summon a new panel from the bystanders and proceed at once with the trial; and if that could be legally done, then why give the defendant twenty-four hours, or any other time, in which to make his challenges? I submit there would be no reason therefor.

Bishop in his New Criminal Procedure (2 Ed.), volume 2, page 747, section 948, in discussing this question says:

"When a juror during the trial becomes too sick to proceed, the case may be taken from the panel, and tried before another at the same or a subsequent term. Or another juror may supply his place, but the prisoner should be given his challenges over again as to the eleven, they should be sworn *de novo,* and the trial begin anew."

And the Supreme Court of California, in the case of People v. Stewart, 64 Cal. 60, in discussing this question said:

"That being so, it follows that the defendant was entitled, after the change had been effected, to all the challenges which the law gives him in the first instance. Within that limit he not only had a right to challenge

the new juror, but likewise any or all of the original eleven. Bishop says, in such a case, 'the prisoner should be offered his challenges *over again* as to the eleven,' and they 'should be sworn *de novo,* and the trial begin again.' In this case the 'new juror' only was challenged, and if the defendant had a right to challenge the eleven over again, he certainly had a right to challenge the new one.

"Instead of having a new juror sworn, the court might have discharged the original jury and impaneled an entirely new one. If that had been done, the right of the defendant to peremptorily challenge any of them would be no clearer than it is to so challenge the new juror called to supply the place of one discharged."

In the case of Rex v. Edwards, 1 Russell & Ryan, 224, "The Twelve Judges of England," in discussing the same question, used this language:

"In Easter term, 25 of April, 1812, this case was argued by Clifford for the prisoner, and Taunton for the Crown, before the judges (except LAWRENCE, J.) when all the judges were clearly of opinion that Mr. Baron Wood had the power of discharging the jury in the manner above stated, and of charging a new jury with the prisoner.

"There appeared some doubt at first, whether the prisoner had had an opportunity afforded him of again challenging the eleven jurymen who had been sworn on the first jury; but, on inquiry, it came out that he had been asked whether he had any objection to *any* of them, and he said 'No, he liked them all very well;' and the conviction was held right."

The same rule is stated in Rex v. Edwards, 4 Taunton's Report, 309.

There are many other cases of like import in England and America.

This rule in the former country was laid down and established about the middle of the seventeenth century, and has been adhered to ever since.

After a careful investigation of this question I am clearly of the opinion, based upon both principle and authority, that the trial court erred in abridging appellant's statutory time in which to make his challenges after Powell was placed upon the panel of twelve; and so believing I am of the opinion that the judgment of the circuit court should be reversed and the cause remanded for a new trial. It is so ordered.

All concur, except WALKER, J., whose views are expressed in the following opinion filed in Division Two, in which all the judges concur except paragraph IV, which is not adopted by the Court in Banc:

"Defendant was convicted in the Dunklin Circuit Court at its November term, 1907, for carnally knowing a female child under the age of fourteen years, and sentenced to twelve years' imprisonment in the penitentiary, from which judgment he appeals to this court.

"Before the trial began, the record shows that after the panel of forty jurors found qualified to sit in the cause had been submitted to the defendant twenty-four hours before the trial, and each party had made his proper challenges and a trial jury of twelve men had been selected but not sworn, the State announced ready for trial, but defendant announced not ready on account of the absence of material witnesses. The court thereupon at the request of defendant, it then being Saturday, continued the hearing of the cause until Monday, and said jurors were permitted to go to their respective homes under the usual cautionary instructions of the court, and directed to return on the following Monday. Upon the convening of court on Monday, the State and the defendant announced ready for trial and all of said jurors answered to their names when called except one Conyers, who was reported by

the sheriff and admitted by the defendant to be too sick to attend. The court thereupon asked counsel to agree upon another juror and defendant announced that he would not so agree. The court then instructed the sheriff to summon another man, and return him into court as such juror, and one Powell was so summoned and returned, and upon examination was found qualified, and directed to take his seat with the other jurors.

"Defendant objected and excepted to this action of the court, and upon being asked if he was ready to proceed with the trial, demanded twenty-four hours in which to challenge the jury as then constituted, and to that end filed a motion embodying the facts above set forth and asking, first, that the court order a new *venire* out of which a panel of forty qualified jurors may be empaneled, from which twelve jurors may be chosen by challenges to try said cause, and, second, that the court quash the panel and grant him twenty-four hours in which to ascertain whether he shall peremptorily challenge the juror so chosen. This motion was by the court overruled, and the defendant was required to proceed to trial before the twelve jurors so chosen.

"A detailed statement of the facts will serve no good purpose.

"The latitude permitted by the trial court in the admission of testimony was as broad and comprehensive as that of a French Court of Assizes. Hearsay, Rumor and Opinion jostled elbows with each other on the witness stand frequently, both at the behest of the State and the defendant. Much of this testimony, however, was irrelevant rather than prejudicial; when prejudicial, exceptions thereto were not saved except as noted in the assignment of errors. The principal evidence for the State is that of the child who testifies unequivocally in support of the truth of the allegations in the information, fixing the date of the offense

on August 17, 1907. Her testimony is corroborated as to her physical condition subsequent to the time the offense was committed, by physicians who, on cross-examination, gave it as their conclusion as experts that the absence of evidence of virginity found in the person of the child, 'might have been due to another cause than sexual contact.' In addition a number of circumstances were shown to corroborate her testimony, some pertinent, others not so. The defense consisted in the denial by the defendant of the crime; testimony contradicting several of the State's witnesses on collateral matters; proof of defendant's former good character; and testimony in the attempt to show a motive for the prosecution on the part of others than the child, based on ill-will towards the defendant.

"The defendant assigns as error: The admission of hearsay testimony; refusing to require the State to elect upon which of the alleged offenses it would rely for conviction; requiring the defendant to go to trial before a jury not selected according to law; and in not rebuking the prosecuting attorney for improper remarks.

"The first clause of section 4471, Revised Statutes 1909, denounces the crime upon which this prosecution was based, viz., the carnal and unlawful knowing of a female child under the age of fourteen years.

"Preliminary to the discussion of the errors assigned by defendant, upon which he asks a reversal, a few general observations may not be inappropriate.

"I. No offenses known to the calendar of crime are more repugnant to the normal mind than those involving the sexual relation. Murder in any form unattended by provocation, arouses indignation and prompts a desire free from personal prejudice, that certain justice be meted out to the offender; while rape **Rape: Caution.** and kindred crimes for the punishment of which modern statutes prescribe heavy

penalties, are regarded not only with indignation but horror and disgust. Certain jurists, cognizant of this condition of the public mind and prompted somewhat perhaps by the admonition of Lord HALE that crimes of this character 'are easy to be made, hard to be proved, and still harder to be defended,' have indicated a tendency in their opinions to require on the part of the State a greater *quantum* of proof and to apply a stricter measure to the credibility of witnesses for the prosecution in these cases than in others.

"Fortunately for the wholesome administration of the criminal law, the tendency indicated has not fettered the State's hands or increased the latitude allowed defendants. In State v. Sechrist, 226 Mo. 574, syl. 4, in discussing the credence to be given the uncorroborated testimony of a child, the prosecutrix in a rape case, this court, speaking through GANTT, J., said: 'The statutes on incest and rape attest that these crimes are within the experiences of courts and legislatures, and to authorize the Supreme Court to reverse the judgment because of the weakness of the testimony, the verdict must be irreconcilable with human experience; and though the record presents a case that challenges credulity, yet if the testimony of the prosecutrix is true, and is not irreconcilable with human experience, and if true defendant is guilty, the Supreme Court will not interfere.' State v. Tevis, 234 Mo. 276, announces a like doctrine. These wholesome general deductions and others of like nature to be found in our reports, have been potent in neutralizing whatever of ill is to be found in the opinions referred to.

"II. The defendant complains of the admission of hearsay testimony. A witness for the State, named Dave Nelson, was asked on direct examination this question: 'Q. I will ask you if your

**Hearsay:
Irrelevant But
Non-prejudicial.** wife told you that Altha McKinney told her how her father was treating Altha?' To which he replied: 'Yes, sir, she did.' After his answer, counsel for defendant said: 'Defendant objects to that as hearsay.' The court's response was: 'Proceed.' The only effect of this testimony was to elicit the source of the witness's information in regard to the offense with which the defendant was charged. That it was wholly irrelevant is without question, but in what manner defendant was injured by its admission we are unable to determine either when considered alone or in connection with all of the other testimony. The admission of non-prejudicial testimony is not material error. This contention is, therefore, ruled against the defendant.

"III. The defendant contends that error was committed in not requiring the State at the close of the testimony to elect upon which offense it **Carnal Knowledge: Election of Offenses.** would rely for conviction. While the prosecutrix gave general testimony as to a number of prior offenses committed by defendant against her of the character named in the information the last and the only one in which the time was definitely fixed was that of August 17, 1907. 'There is,' as was said in effect in State v. Palmberg, 199 Mo. l. c. 248, 'no hard and fast rule as to when the State shall elect and each case must be determined upon its merits.' When several acts are put in evidence to make out a case, it is not error that an election is not compelled. Primarily an election as to offenses rests in the sound discretion of the court. [State v. Green, 66 Mo. l. c. 644; State v. Hargraves, 188 Mo. l. c. 348; Whar., Cr. Pl. & Pr. (9 Ed.), sec. 295.]

"Evidence of other acts of a like character was not introduced in this case to prove substantive offenses upon which a conviction might be had, but in

corroboration and explanation of the evidence of the act charged. [Mitchell v. People, 24 Colo. 532.]

"The necessity of an election is not apparent when, as in the case at bar, but one offense was clearly proved. In its instructions the court limited the jury to the 17th day of August, 1907, as the date of the alleged offense to be considered by them in arriving at their verdict. With the proof and the instructions both pointing to one definite date, the refusal of defendant's request for an election is not prejudicial error. A case in point is that of State v. Sechrist, supra, in which it is held that while evidence of acts, if any prior to that definitely proved, may be admitted as tending to prove or disprove the act on which the conviction is sought, their admission in evidence does not require the State to elect upon which act of intercourse it will seek a conviction. In view of all of the facts, defendant's contention in this regard is without merit.

"IV. Defendant complains of the manner in which the jury was selected. He made no objection to the array but challenged peremptorily the number to which he was entitled, the State did likewise and a qualified trial panel of twelve was thus selected. Defendant's motion thereafter to quash the array was too late (State v. Jeffries, 210 Mo. 302); if it had been filed in time, no reason was assigned therefor except that the array had been improperly selected. This was insufficient, the motion should have specified in what the improper selection consisted; it not appearing what right of the defendant was violated by the alleged improper array, the overruling of his motion in this was not error. [State v. Brennan, 164 Mo. 487.]

Challenges:
After
Substitution of
Talesman.

"But defendant contends that although he assented to the selection of the trial jury and announced ready for trial, before the jury was sworn, the court, upon

being apprised that one of the panel was ill and unable to attend, which defendant admitted, another juror was directed to be summoned by the court, who upon being found qualified was seated in the jury box, thus completing the trial panel. After which, against defendant's objections, the jury was sworn to try the issue and the cause was proceeded with.

"Unless some constitutional or statutory right was violated in the selection of the last juror, defendant's contention is not tenable.

"The Constitution requires, first, that the right of trial by jury as heretofore enjoyed shall remain inviolate; and, second, that the accused shall be given a speedy public trial by an impartial jury of the county. The first provision has reference to the right of trial by jury as it existed at the time of the adoption of the Constitution. [State v. Bockstruck, 136 Mo. 335.] This provision is found in the same words in the Constitutions of 1820, 1865 and 1875, and must, therefore, refer to the right as it existed at the time of the adoption of the first Constitution. The words 'heretofore enjoyed' employed in the provision, do not apply to common law juries only, but to such as were authorized before and at the time the Constitution was adopted. [State ex rel. v. Holtcamp, 235 Mo. 1. c. 237.] Prior thereto it was provided in the Territorial Laws (p. 123, sec. 62) that 'in all criminal cases the trial shall be by a jury of twelve good and lawful men of the vicinage;' this, therefore, is the 'right heretofore enjoyed' which the Constitution prescribes shall remain inviolate. The second provision is nothing more than a declaration, in express terms, of the right granted in the first, with the addition of the words 'a speedy public trial.' What difference, as affecting the right granted, can there be between an 'impartial jury of the county' and 'twelve good and lawful men of the vicinage?' The only difference, therefore, between the two provisions is as to the manner in which their mean-

ing is to be determined; the first requiring reference to other laws, the second defining itself by its own terms. There is nothing in this case to indicate that the defendant was not fully accorded the right granted him under the Constitution, viz., to a trial by an impartial jury. This being true, his contention so far as the Constitution is concerned, is without foundation.

"Was any statutory right of the defendant violated in the selection of the twelfth juror? Defendant contends among other things that he should have been given twenty-four hours within which to determine whether he would peremptorily challenge said juror. There is no statutory authority for this contention. After defendant had participated in and consented to the selection of the trial jury, upon the necessity subsequently arising for the selection of another than one of the twelve impaneled, defendant's right was limited to a challenge of the substituted juror for cause. This he did not exercise and he raises no objection to the juror's qualifications. Early in the judicial history of this State it was held that after a trial panel had been selected, and before it was sworn, a juror might be excused or discharged, and another substituted in his stead, for reasons satisfactory to the court. [State v. King, 1 Mo. 717.] This power is not questioned unless it is shown that the defendant has thereby been prejudiced. If precedents were needed to support this conclusion, many are to be found in our reports construing different phases of the law in regard to the selection of juries and showing the large discretionary power given to trial courts in this regard. A recent case which may stand as a type for the others is State v. Yandell, 201 Mo. l. c. 659. In this case in the impaneling of the jury, the sheriff returned into court a special *venire* of forty, from which a panel of thirty men qualified as jurors was selected; the respective parties made their challenges and from this panel of thirty, twelve jurors were selected to sit upon the

trial of the cause; thereafter one of said jurors was excused by the court from further service because of the sudden illness of his wife; thereupon the court adjourned until the next morning when they again convened and another was submitted as a juror instead of the one excused; the substituted juror was duly qualified and the jury sworn to try the cause. Before the trial began, the defendant filed a motion to discharge the jury upon the ground that he was entitled to twenty peremptory challenges, whereas he had only been allowed twelve. The court held that his objection was not timely, the motion was overruled, and upon appeal the action of the trial court was held not to be reversible error.

"The rule announced in the Yandell case is well established in other jurisdictions. It is stated generally by Bishop that 'if a juror becomes ill after he is selected on the trial panel, and before the jury is sworn, the court may excuse him and select another in the usual course.' [2 Bishop's New Cr. Proc. (4 Ed.), sec. 948.]

"A case decided by the Supreme Court of Georgia is pertinent. After a trial panel had been selected but not sworn, and a day and a night had elapsed before the proceeding was resumed, one of the jurors became sick and unable to serve. The court upon being satisfied as to the juror's illness, discharged him and proceeded until another juror was selected and the panel completed. The court held that this was not error; that it was immaterial how the fact of the sickness was shown, if the trial judge was satisfied that it existed, and that the consent of counsel was not necessary to the validity of the court's action. [Ozburn v. State, 87 Ga. l. c. 177.]

"In Michigan a like rule prevails and 'before a juror has been sworn in the cause, the judge may excuse him for any reason personal to the juror which seems to the judge sufficient.' [People v. Carrier, 46

Mich. 442.]   In a later case, the same court declares that 'the circuit judge is invested with a certain degree of discretion in the selection of jurors for a panel. Such discretion is to be exercised in seeing that proper and competent men are selected; and so long as the case of the parties is not prejudiced by the exercise of such discretion, they cannot complain.' [People v. Barker, 60 Mich. l. c. 289, 1 Am. St. l. c. 506.]

"In short, the generally accepted view is that the defendant in a criminal case is not prejudiced by even the rejection of proper jurors, so long as an impartial jury is obtained. [Hurley v. State, 29 Ark. 17, 22; People v. Arceo, 32 Cal. 40; Stratton v. People, 5 Colo. 276.]   In People v. Arceo, supra, SAWYER, J., said: 'A party is entitled to a lawful jury, but no decision has been brought to our notice to the effect that under all circumstances he is, as a matter of absolute right, entitled to have the first juror called who has all the statutory qualifications.'

"From all of the foregoing it is evident that defendant has no valid ground for objecting to the impaneling of the twelfth juror.

"V.   Defendant assigns as error the remarks of the prosecuting attorney in his closing argument to the jury, which were as follows: 'Gentlemen of the jury, if it were not for the secret of the prison bars you would not have any doubt or trouble in arriving at your verdict.' What is meant by this remark we are unable to determine, but it certainly contains nothing which could have prejudiced the defendant in the minds of the jury. This is the test to be applied to such remarks and unless they disclose matter which may tend to injure the accused, they do not merit consideration.   Besides, when the remark complained of was made, the court promptly admonished the prosecuting attorney to keep within the record.   This was sufficient to remove any

*Remarks of Prosecuting Attorney.*

sting in the remarks if they had not been utterly mean-ingless. The character of this case would have justi-fied strong denunciation by counsel for the State. The bestiality of the defendant disclosed by the testimony, has fortunately few parallels.''