**PENNSYLVANIA R. CO. v. HAMMOND.**

(Circuit Court of Appeals, Second Circuit. June 1, 1925.)

**No. 340.**

**1. Master and servant ☞293(12)—Charge location of car striking locomotive fireman was immaterial, and refusal of defendant's charge held reversible error.**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665), for injuries sustained by locomotive fireman when struck by car left on siding while he was looking out of engine, charge, that in determining defendant's liability, location of car was immaterial if its location was in dangerous proximity to moving train, and refusal of defendant's charge that defendant would not be liable unless plaintiff's injury occurred by his head coming in contact with the car while standing on the crossover, held error.

**2. Master and servant ☞101, 102(2)—Railroad not insurer of safety of employees.**

Railroad company is not an insurer of the safety of its employees; it being only bound to exercise care which exigency reasonably demands.

**3. Master and servant ☞210(4)—Charge locomotive fireman did not assume risk from presence of car, either upon straight siding or crossover, held erroneous.**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665), for injuries

to fireman struck by car left on siding while looking out of engine, charge that plaintiff did not assume the risk which arose from presence of car, either on straight siding or projecting onto crossover, held erroneous.

**4. Master and servant ☞210(4)—Locomotive fireman held not to have assumed risk when struck by car on siding.**

Locomotive fireman, struck by car on siding while looking out of engine, held as a matter of law not to have assumed the risk, if such car was on the crossover and negligently left too near the main track over which his locomotive was passing.

**5. Courts ☞347—Defendant held to have waived his right to insist upon replication by not objecting to introduction of evidence and not moving for dismissal until case was closed.**

In locomotive fireman's action for injury under federal Employers' Liability Act (Comp. St. §§ 8657–8665), with defense that plaintiff had released his cause of action, defendant held to have waived his right to insist upon a replication, in view of rule VII of Common Law Rules of the United States District Court, Western District of New York, Supreme Court of the United States Equity Rules, rule XXXI, where it raised no objection to introduction of evidence by plaintiff to show that circumstances under which release was given were such as to invalidate it, and did not move for a dismissal on ground that plaintiff had signed a valid release until case was closed.

In Error to the District Court of the United States for the Western District of New York.

Action by Edsall Hammond against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial granted.

Alexander S. Diven, of Elmira, N. Y., for plaintiff in error.

Mortimer L. Sullivan, of Elmira, N. Y., for defendant in error.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

ROGERS, Circuit Judge. This action is brought under the federal Employers' Liability Act (35 Stat. 65 [Comp. St. §§ 8657–8665]). The plaintiff in his complaint asked for judgment against defendant in the sum of $150,000, for injuries he received in the performance of his duties as a fireman on one of defendant's locomotives—the accident occurring near Penn Yan in the state of New York. And it is stipulated between the parties that the plaintiff and the defendant were each engaged in interstate commerce at the time the plaintiff received the injuries for which the suit is brought.

The jury returned a verdict in the plaintiff's favor for $47,000, and judgment has been entered against defendant in that amount, together with $1,755.61, being plaintiff's costs and disbursements; the whole aggregating $48,755.61.

The complaint alleged that on June 11, 1923, the defendant so carelessly and recklessly placed and located cars and obstructions on its tracks that the plaintiff was brought into violent collision with the said car, cars, or obstructions, and as a result thereof received grievous and permanent bodily injuries. It further alleged that the said injuries were due solely to the negligence and carelessness of the defendant, while the plaintiff was in the exercise of due care and diligence.

The defendant in its answer set up as a first defense to the cause of action that the injuries alleged in the complaint were not due to any negligence on the part of the defendant.

It set up as a second defense that the injuries sustained were caused by reason of the plaintiff's own negligence, or that such negligence contributed thereto.

It set up as a third defense that the plaintiff assumed the risks incident to his employment as a fireman on defendant's locomotive; the employment being an obviously dangerous one, and the risks being obvious and well known to him at the time he entered upon his employment.

It set up as a fourth defense that, before the commencement of the action, and for a valuable consideration, the plaintiff, by an instrument in writing, and signed by him, released the defendant from the alleged claim set forth in the complaint.

Before considering the real merits of this case, we may refer to the fact that the defendant strenuously insists that a serious error was committed in the impaneling of the jury. It seems that, after the plaintiff had put in all his evidence and two of defendant's witnesses had been examined, one of the jurors was taken ill and a mistrial was declared. Counsel then asked the court to allow the case to go over the term on the ground that the entire panel of jurors was disqualified from sitting in the case. The court, however, denied the motion, and stated that he did not think that the facts relied upon constituted disqualification.

At the second trial, the defendant challenged for cause three jurors who sat in the previous trial. Each juror, being interrogated, stated he could disregard the evidence introduced in the uncompleted case, and that

he had formed no impression from the testimony then introduced.

The challenge for cause was denied, and an exception was taken. After the defendant had exhausted all its peremptory challenges, there remained four jurors in the box who sat in the first trial. These were challenged for cause, the challenge was overruled, and exception was taken.

It has been held in some cases that a juror who has once sat in a case is disqualified from again hearing the case. In Weeks v. Medler, 20 Kan. 57, 62, Judge Brewer (afterwards an Associate Justice of the Supreme Court of the United States), writing for the court, and holding such a juror incompetent, said:

"The idea is that a juror, having once served, will have opinions more or less strongly settled from the testimony he has heard, and of course he will have such opinions whether he has heard much or little testimony. Indeed, it would seem as though there were greater danger of injustice from a juror who has heretofore heard only one side of the case than from one who has heard both. * * * But whether much or little, they heard all the plaintiff's testimony; and, if that made out a prima facie case, and they heard nothing more, their convictions in favor of the plaintiff would naturally become more settled and fixed during the interval between the two trials, and they would scarcely enter the second inquiry entirely impartial as between the parties."

But in the Kansas case the statutes of the state made it a good cause of challenge that one "has formerly been a juror in the same cause." The incompetency of such a juror is held in Famulener v. Anderson, 15 Ohio St. 475. Some of the cases hold that a juror who sat on the first trial is disqualified to sit on the second trial if in the first trial the jury disagreed. Dothard v. Denson, 72 Ala. 541; Hester v. Chambers, 84 Mich. 562, 48 N. W. 152. And in a number of cases the courts have held that a juror is not incompetent merely because he heard the evidence at a former trial, if he had formed no opinion as to the merits. Smith v. State, 207 Ala. 428, 93 So. 397; Stover v. State, 204 Ala. 311, 85 So. 393; Leas v. Patterson, 38 Ind. 465; State v. Prins, 117 Iowa, 505, 91 N. W. 758; State v. Sechrist, 226 Mo. 574, 126 S. W. 400; Wade v. State, 12 Tex. App. 358; and see Commonwealth v. Roddy, 184 Pa. 274, 39 A. 211; 35 C. J. 347.

While we are inclined to think that, under the circumstances, no error was committed

in impaneling the jury, it is not necessary to decide that question at this time, and we dispose of this case on other grounds.

We come now to what we regard as the real merits of the case. The plaintiff testified that at the time he was injured he was stationed on the left side of his locomotive, in the gangway between the engine and the tender; that he was passing the Penn Yan station at a speed of from 20 to 25 miles an hour; that holding onto a handle on the engine he thrust his head some 8 or 10 inches beyond the locomotive, looking back to see whether any orders were given, and that it was the custom and practice of firemen so to look back for orders; and that, while he was so engaged in looking, he was struck on the side of the head by some object which he described as a steel gondola car. He was struck almost as soon as he put his head out of the engine; being hit on the back side of his head and thrown out upon the ground. He was put into an ambulance and taken to a hospital in Penn Yan, where he remained for a month, and then was removed from there to a hospital in Rochester. The testimony disclosed that at the time of the trial he had total paralysis of his right arm which the surgeons thought would be permanent. He had a broken neck "definitely at the sixth and seventh, and less definitely at the fifth cervical vertebra." The right shoulder bone, which was fractured at the time of the injury, seemed at the trial to be entirely cured. At the time of the accident, his right hand was broken, and at the time of the trial the hand was still in a splint, which was worn at that time merely as a support.

The plaintiff testified that the car by which he was struck was standing on a crossover which connected the main track, on which his locomotive was running, with a siding track running parallel thereto; and he claimed that the car on the crossover was within 8 or 10 inches of the side of his locomotive. But his testimony as to the location of the car was contrary to that of the five members of the train crew, who testified that it was on a siding and between three and four car lengths from it. There was other evidence to the same effect. The testimony of some eight witnesses located the car on the siding. If their testimony was believed, then it was also necessary to believe that the clearance between the siding and the plaintiff's locomotive was at least 26½ inches. And the engineer on the locomotive had testified that, if the steel gondola car had been standing on the crossover, he would have seen it, as

he was looking ahead. He testified he saw no car on the crossover. The court in his charge, after directing attention to the fact that there was a conflict in the testimony as to the position of the car, whether it was on the crossover or on the siding, said:

"I instruct you that it makes no difference whether this car was on the crossover or projected over the switch, or whether it was on the straight track of the siding, providing you find the location was in dangerous proximity to the moving train. That is a question that is submitted to you as one of fact. Was this car in a dangerous position? Was it so close to the moving train so that, when this plaintiff leaned out a distance of 8 to 12 inches in the performance of his duties, he was struck?"

The defendant's counsel excepted to this, and asked the court to charge as follows:

"I ask your honor to charge that, unless the jury find the accident happened as the plaintiff says—by his head coming in contact with the car while standing on the crossover—their verdict must be for the defendant.

"The Court: Declined.

"Mr. Diven: Exception. That if the car was not on the crossover, but was on the siding, their verdict must be for the defendant.

"The Court: Declined.

"Mr. Diven: Exception. I also ask your honor to charge the jury that, if the car was on the siding, the plaintiff cannot recover under his complaint.

"The Court: Declined.

"Mr. Diven: Exception. I except to your honor's submitting any question of clearance between the side track and the main track to the jury, as no negligence can be predicated thereon; and I ask your honor to charge the jury that no negligence can be predicated upon the question of clearance, providing the car was on the siding and not on the crossover.

"The Court: Declined.

"Mr. Diven: Exception. ✱ ✱ ✱"

There is no allegation in the complaint that the defendant used any improper appliances in the operation of its railroad and so caused the injuries complained of, but the sole allegation is that it so carelessly and recklessly located its car or cars that the plaintiff violently collided therewith, with the result that he was injured. The jury might have found that such was the fact, if satisfied that defendant had left a car standing on the crossover and so close to the

main track that the plaintiff collided with it in the darkness, without notice of its presence. But plainly quite another question was presented if the car stood on the siding, as there was evidence to show that from the center of the main track to the center of the siding was 12 feet and 4 inches, and that the distance between the outside of the rails of those tracks was 7 feet and 2½ inches.

[1, 2] We are satisfied that in the charge as delivered, and in refusing to charge as directed, the learned District Judge fell into reversible error. A railroad company is not an insurer of the safety of its employees. It is only bound to exercise the care which the exigency reasonably demands.

In Shearman & Redfield on Negligence (6th Ed.) vol. 1, § 187, the degree of care required of a master is laid down as follows:

"The master is bound to use ordinary care, diligence, and skill for the purpose of protecting his servants from encountering unnecessary risks in his service; but he is not bound to use any higher degree of care. A railroad company, for example, although bound to use the utmost care and diligence for the protection of its passengers from injury, owes no such duty to its own servants, although they may be exposed to the same perils. Ordinary care, however, means such as is commensurate with the perils of the situation; and it requires that, in all occupations attended with great and unusual danger, all appliances readily attainable, known to science, should be used for the prevention of accidents."

In Reese v. Philadelphia & Reading Railway Co., 239 U. S. 463, 465, 36 S. Ct. 134, 135 (60 L. Ed. 384), it was said:

"The rule is well settled that a railroad company is not to be held as guaranteeing or warranting absolute safety to its employees under all circumstances, but is bound to exercise the care which the exigency reasonably demands in furnishing proper roadbed, tracks and other structures. A failure to exercise such care constitutes negligence."

The action was brought to recover for the death of a fireman who was killed on his engine while it was moving through a railroad yard in Philadelphia. He had extended his body outside the line of the tender and engine, and was crushed by contact with a freight car standing on a parallel track, which it was claimed was too close to the track over which his engine was moving. Both the District Court and the Circuit Court of Appeals held the evidence insufficient to carry the question of negligence to

the jury. The Supreme Court concurred in that conclusion, and affirmed the judgment. Mr. Justice Hughes and Mr. Justice Pitney dissented.

And in the instant case it seems to us that the sole question is whether the car, with which the plaintiff claims he came in collision, was on the crossover, as he testified, or, as the other witnesses testified, was on the siding. We think the jury should have been instructed that, if they found that the car stood on the siding, they should find for the defendant, as there was no evidence of negligence on the part of the defendant. On the other hand, the jury should have been told that, if they found that the car stood on the crossover, they were entitled to find for the plaintiff, if they found that it was negligently placed there by defendant. For in that case it cannot be said that the plaintiff had assumed the risk.

The court charged as follows on the assumption of risk:

"There is no evidence in this case, and, indeed, I understand that it is not claimed by the defendant that the plaintiff saw this car, or knew of its proximity to the moving train, and accordingly I instruct you that the plaintiff did not assume the risk which arose from the presence of the car either upon the straight siding or projecting onto the crossover."

[3] We think this charge was erroneous, in that it instructed the jury that the plaintiff "did not assume the risk which arose from the presence of the car either upon the straight siding or projecting onto the crossover."

As respects the assumption of risk, the ruling of the Supreme Court of the United States in Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335, is instructive. In that case an experienced locomotive engineer was killed by being struck by the projecting arm of a mail crane, when leaning from his cab window in the discharge of his duty. The crane stood at the same distance as all the other mail cranes along the road. The end of the crane when elevated came within 14 inches of the locomotive, and so was near enough to be capable of hitting a person leaning out of the cab window. Mr. Justice Holmes, writing for the court, speaking of the crane, said:

"It was visible from the engineer's seat half a mile ahead, through a front window. About a mile before reaching Carney, Linder had noticed that the main driving pin on the engine was getting hot, had crept out upon the running board to see about it, and

had returned. It may be supposed that at the time of the accident he was leaning out of the side window to look at it again and was acting in the course of his duty. The position in which his body was first seen and the place of the wound indicate that he was more than 14 inches out from the engine's side."

The court held that the engineer had assumed the risk, and it was said that, "to allow the jury to find a verdict for the plaintiff, was to allow them to substitute sympathy for evidence and to impose a standard of conduct that had no warrant in the common law." Mr. Justice Clarke wrote a dissenting opinion, and Mr. Justice Day and Mr. Justice Pitney concurred in his dissent. That case is, however, distinguishable from this. In that case the mail crane was a fixed structure, the existence of which the decedent well knew. In the instant case the plaintiff claimed that his injuries were caused, not by a fixed structure, but by a movable car which he claimed had been improperly left on a siding a few hours before, and which in the dark he did not see. If his story was believed by the jury, he had not assumed the risk.

[4] That the plaintiff did not, as matter of law, assume the risk if the car with which he collided was on the crossover and negligently left too near the main track, over which the plaintiff's locomotive was passing, is shown by the decision in Illinois Central R. R. Co. v. Skaggs, 240 U. S. 67, 36 S. Ct. 249, 60 L. Ed. 528, and by that in Chesapeake & Ohio R. Co. v. Meadows, 119 Va. 33, 89 S. E. 244.

Inasmuch as this case must go back for a new trial, it may be desirable to refer to the release which was pleaded in the answer as a bar to this action. The plaintiff interposed no replication.

At the close of the entire case, the defendant's counsel moved for a nonsuit and dismissal of the complaint upon the ground that it appeared that for a good and valuable consideration the plaintiff had signed a written release, releasing the defendant from all claims or causes of action he might have. This motion the court denied, and an exception was taken. Thereupon the counsel moved on the same ground that a verdict be directed in favor of defendant. This was also denied by the court.

In the charge to the jury, the court commented at some length on the release. He charged on that subject in part as follows:

"I instruct you that, although releases from liability that are understandingly made should be given effect, and the parties thereto should not be permitted to recede therefrom, still, the courts hold that, where a person suffering an injury has given a release, it is permissible to examine into the matter upon a trial to recover damages, with the view of ascertaining what the physical condition of the party was at the time of making the release, and whether at that time he had an understanding of his act in becoming a party thereto. This matter is submitted to you as a question of fact, whether, in view of all the evidence, the physical condition of the plaintiff and the asserted misrepresentations, and lack of understanding by him was such that the instrument introduced in evidence and exhibited to you should not be given effect, and that it should be released therefrom.

"There is a conflict of evidence in reference to the plaintiff's understanding at that time. There is a conflict of evidence in reference to his suffering at that particular period. It is the claim of defendant that the plaintiff had complete understanding of the contents of the release; moreover, that it was read to him by the nurse after he himself had read it. As I understand it, the testimony tends to show that, although on the trial he testified he could neither read nor write, his name seems to be appended to that document.

"You will bear in mind the testimony of the nurse as to this condition and what occurred on that particular occasion; moreover, you will bear in mind the testimony of Mr. Swartz and one or two other witnesses, and subsequent conversations with Mr. Swab, in his office, in reference to his having signed the release, all of which is emphasized by the defendant with the view of establishing that the plaintiff did have an understanding of this release, and that he did accept, or was willing to accept, the weekly compensation specified in the document, and, if you believe such to have been the fact, then the defendant has been released from liability, and your verdict should be for the defendant, 'No cause of action.'

"On the other hand, if you find the suffering of the plaintiff in the hospital at this particular time was of such nature as he described, and that on the night prior to the execution of the document it was necessary for him to take narcotics, and you find from the evidence that this narcotic was still influencing him to any extent, and if you believe that he did not have a correct understanding of the document, or of his rights, then the defendant should not be released,

and in such case you are justified in concluding that the plaintiff is not bound by any of its provisions."

At the conclusion of the charge, defendant's counsel asked the court to charge that, in the absence of actual fraud in procuring the release, it was binding on the plaintiff. The court thereupon asked the opposing counsel what his judgment was, and the latter stated that he thought the application should be denied, "for the reason that a mistake will vitiate as well as an alleged actual fraud." The court then declined to charge as requested. And an exception was taken.

Counsel for defendant then asked the court to charge that "a lack of understanding alone is not sufficient to void the release." To this the court replied: "I think that his lack of understanding should be taken into consideration with his physical condition." An exception was taken to this refusal to charge as requested.

Did the court err in declining to hold that the release was a bar to the action? As the answer set up new matter which, if true, constituted an affirmative defense and was a bar to the action, a replication was necessary according to the principles of the common law. But no replication was interposed. Instead, the parties appear to have litigated the issue according to the practice prevailing in the state of New York, which did not require a reply in such a case. The plaintiff relies upon rule VII of the Common Law Rules of the United States District Court, Western District of New York, which reads as follows:

"Conformity to New York State Practice. —In all cases not provided for by the rules of this court, causes at common law shall proceed as nearly as may be in accordance with the law for the time being of the state of New York and the practice thereunder of the Supreme Court of said state."

And under rule XXXI of the Equity Rules of the Supreme Court of the United States it is provided:

"Unless the answer assert a set-off or counterclaim, no reply shall be required without special order of the court or judge, but the cause shall be deemed at issue upon the filing of the answer, and any new or affirmative matter therein shall be deemed to be denied by plaintiff. * * * "

In Union Pacific Railway Co. v. Harris, 63 F. 800, 803, 12 C. C. A. 598, the Circuit Court of Appeals for the Eighth Circuit said:

"The general principle is now well established that an appellate court will not entertain an objection to the form of the action, when the objection was not interposed in apt time in the trial court. It will be presumed that the parties assented to the theory that the remedy adopted was the proper one, and they will be held to that theory on appeal. Moreover, it is a general rule that questions not presented to the trial court will be deemed waived."

[5] We think that the defendant waived its right to insist upon a replication by going to trial without insisting that upon the pleadings the action was barred. Not only did the defendant go to trial without objection, but the defendant raised no objection to the introduction of evidence by the plaintiff to show that the circumstances under which the release was given were such as to invalidate it. It was not until the case was closed that the defendant moved a dismissal of the complaint upon the ground "that it now appears that for a good and valuable consideration the plaintiff signed a written release, releasing the defendant from all claims or causes of action he might have." The court then properly denied the motion.

We have not overlooked Keatley v. United States Trust Co., 249 F. 296, 161 C. C. A. 304, in which this court had before it Judicial Code, § 274b, as amended by Act of March 3, 1915, c. 90 (38 Stat. 956 [Comp. St. § 1251b]). It provides that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court." We there held that it was not the intention of Congress, by the provision mentioned, to abolish all distinctions between actions at law and suits in equity, and that, where defendant relied upon a release as a legal defense to a common-law action, it was necessary to obtain a cancellation of the release in equity. A petition for certiorari was granted by the Supreme Court in 247 U. S. 511, 38 S. Ct. 579, 62 L. Ed. 1242, which was afterwards dismissed by the court on the application of the petitioner (254 U. S. 658, 41 S. Ct. 5, 65 L. Ed. 461).

And in Union Pacific Railroad Co. v. Syas, 246 F. 561, 158 C. C. A. 531, the Circuit Court of Appeals in the Eighth Circuit, passing upon the provision in the Judicial Code above stated, declared its opinion as follows:

"We are clearly of the opinion that, when equitable relief is asked in an action at law under the statute above quoted, the case for equitable relief should be tried as a case in

equity, and that the great weight of authority is in favor of the practice of trying the case in equity first, for this practice serves to keep the equitable matter distinct, and to prevent what must otherwise frequently ensue—confusion and embarrassment in the progress of the action."

See, also, Upson Nut Co. v. American Shipbuilding Co. (D. C.) 251 F. 707, where, in an action at law upon a contract, the defendant was allowed by cross-petition to seek reformation of the contract, and the equitable issues arising thereunder were tried to the court in advance of the trial of the issues in the law action.

We have not overlooked the decision of the Circuit Court of Appeals in the First Circuit in Manchester Street Railway v. Barrett, 265 F. 557, in which it was held that the validity of a release might be tried in the law action. No reference is made in the opinion to the decisions which have laid down a contrary doctrine. The fraud practiced may be such that a release is void rather than voidable, as where by fraud one is induced to execute an instrument of a different character from the one he thought he was signing. In such a case the invalidity of the instrument can, of course, be shown in an action at law. But if the fraud is of such a nature as to make an instrument voidable rather than void, the rule in this circuit requires that the invalidity of the instrument should be determined in equity prior to the trial at law. And this may be done by filing in the common-law action a cross-petition setting up the equitable relief sought which can be tried by the court in advance of the trial of the issues in the action at law. But, for the reasons heretofore stated, we think that both parties tried this case upon the theory that no replication was necessary under rule VII of the Common Law Rules of the United States District Court of the Western District of New York, and in our opinion the court properly denied the instruction asked for after the case was closed.

Judgment is reversed, and a new trial granted.